**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| TAMMY J. ORNDORFF, | CASE NO. 1:14-cv-02465-CCC-GBC |
|---|---|
| Plaintiff, | (CHIEF JUDGE CONNER) |
|  | (MAGISTRATE JUDGE COHN) |
| v. |  |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | **REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S APPEAL** |
| Defendant. | Docs. 1, 10, 11, 14, 19, 20 |

## <u>REPORT AND RECOMMENDATION</u>

### I.     Introduction

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Defendant") denying the application of Tammy J. Orndorff ("Plaintiff") for supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act") and Social Security Regulations, 20 C.F.R. §§404.1501 *et seq.*, §§416.901 *et. seq.*[1] (the "Regulations").

Under the deferential substantial evidence standard of review, Plaintiff has to demonstrate that no reasonable person would have denied her benefits. Plaintiff

---

[1] Part 404 governs DIB, Part 416 governs SSI. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). Like *Sims*, these regulations "are, as relevant here, not materially different" and the Court "will therefore omit references to the latter regulations." *Id.*

asserts that she was unable to perform any work because of disabling physical impairments, including diabetes, obesity, and lower extremity neuropathy, and mental impairments. Most of the records cited by Plaintiff in this appeal are from prior to the relevant period, but a prior ALJ found that these records did not support disability, and res judicata applies. During the relevant period, Plaintiff treated conservatively, with five visits to her primary care provider ("PCP"), six medication management visits with a psychiatrist, and a brief hospitalization. Her PCP observed very mild decreased sensation in her lower extremity at one visit, and prescribed Neurontin. At every other visit thereafter, he observed no objective abnormalities. With regard to mental impairments, the ALJ relied on a non-treating medical opinion from a psychiatrist who opined that she did not suffer disabling impairments. The ALJ properly found that Plaintiff was less than fully credible, and Plaintiff does not challenge the ALJ's credibility finding on appeal. Plaintiff has failed to demonstrate that no reasonable person would have denied her benefits. The Court recommends that Plaintiff's appeal be denied, the decision of the Commissioner be affirmed, and the case closed.

## II.    Procedural Background

On May 20, 2011 and July 22, 2011, Plaintiff applied for DIB and SSI under the Act, respectively. (Tr. 294-302). On September 23, 2011, the Bureau of Disability Determination ("state agency") denied Plaintiff's application (Tr. 170-

95), and Plaintiff requested a hearing. (Tr. 216-17). On December 4, 2012 and March 12, 2013, an ALJ held a hearing at which Plaintiff—who was represented by an attorney—and a vocational expert ("VE") appeared and testified. (Tr. 54-155).  On March 21, 2013, the ALJ found that Plaintiff was not entitled to benefits. (Tr. 37-53). Plaintiff requested review with the Appeals Council (Tr. 8), which the Appeals Council denied on October 21, 2014, affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-7). *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

On December 28, 2014, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On March 9, 2015, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 11, 12). On April 23, 2015, Plaintiff filed a brief in support of the appeal ("Pl. Brief"). (Doc. 14). On May 29, 2015, Defendant filed a brief in response ("Def. Brief"). (Doc. 19). On June 8, 2015, Plaintiff filed a brief in reply ("Pl. Reply"). (Doc. 20). On June 29, 2015, the Court referred this case to the undersigned Magistrate Judge. The matter is now ripe for review.

### III.    Standard of Review and Sequential Evaluation Process

To receive benefits under the Act, a claimant must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The ALJ uses a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520. The ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §§ 404.1520. Before step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four. If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist

in the national economy that the claimant can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability under the Act lies with the claimant. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

When reviewing the denial of disability benefits, the Court must determine whether substantial evidence supports the denial. *Johnson v. Commissioner of Social Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "less than a preponderance" and "more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

## IV.   Relevant Facts in the Record

Plaintiff earned between $0.00 and $13,309.20 in each of her last ten years of working, from 2000 to 2009. (Tr. 307). She did not earn anything after 2009. (Tr. 307). She has past relevant semi-skilled and unskilled work at the medium exertion level as a janitor and a nursing assistant. (Tr. 47, 317). As of August of 2009, she was living with an "abusive" husband and three children aged six, four,

and three. (Tr. 670). By December of 2009, she reported that she had separated from her husband, and had her children "24/7." (Tr. 658). Her youngest child had been diagnosed with ADHD and ODD, and Plaintiff was living with her mother because her only significant income was child support. (Tr. 658). Records from 2009 through March of 2011 show repeated hospitalizations for suicide ideation; a suicide attempt; and emergency room visits for dizziness, elevated sugars, anxiety, and excessive Xanax use. (Tr. 382-85, 401, 415-17, 423-28, 430-46, 452-56, 478, 543-46, 554-56, 568, 572, 574, 743, 745, 748). These records contain objective findings that include depressed mood and affect, suicidal ideation, slow flow of thought, ideas of hopelessness/helplessness, impaired insight and judgment, visual hallucinations, confusion, sleep disturbances, poor concentration/memory, irritability, and panic attacks. *Id.* On March 7, 2011, an ALJ found that Plaintiff was not disabled under the Act. (Tr.159 -69).

She was diagnosed with a back sprain in April of 2011, but her diagnoses during the relevant period did not include any back impairment. (Tr. 521, 757, 779-81, 784, 811). In April of 2011, she reported treating with Flexeril and Vicodin, but there is no evidence she treated with them, or another narcotic pain medication, during the relevant period. (Tr. 521). Reports to her primary care physician indicate complaints of diabetic neuropathy, but, aside from a phone call in October of 2011, no mention of back pain. (Tr. 757, 779-81, 784, 811). Plaintiff was

instructed to present to an orthopedic specialist in April 2011 if her back pain continued, but the record contains no evidence of treatment with specialists for physical impairments during the relevant period. (Tr. 517).

Plaintiff applied for benefits under the present application on May 20, 2011 and alleges onset on May 27, 2011. (Tr. 42, 294-95). As of Plaintiff's onset date, she was taking Metformin, Glipizide, lavenear, Cymbalta, Xanax, and Prozac. (Tr. 514). The only treatment during the relevant period for physical impairments consisted of five visits during the relevant period with her primary care physician for physical impairments, including diabetes, hyperlipidemia, neuropathy, and fatigue. (Tr. 757, 781, 784, 786, 811). Laboratory testing typically showed elevated sugars. (Tr. 528, 532).

On May 25, 2011, Plaintiff called her primary care provider and indicated that her electricity had been turned off and her insulin was in a refrigerator. (Tr. 571). In July of 2011, Plaintiff reported neuropathy in her left leg and fatigue, but "otherwise, she denies any problems or complaints." (Tr. 757). Examination indicated normal findings, aside from "very mild decreased sensation in the left lower extremity." (Tr. 757). She was prescribed Neurontin. (Tr. 757). Her diagnoses included only diabetes, hyperlipidemia, neuropathy of the left lower extremity, and fatigue. (Tr. 757). By September 1, 2011, she had no motor or

sensory deficits. (Tr. 780). Diagnoses included only diabetes and depression. (Tr. 780).

On August 5, 2011, Plaintiff completed a Function Report and stated she had "nerve pain all over [her] body" that required her to lie down throughout the day. (Tr. 334). She also reported that depression, anxiety, and her "stressful life" limited her ability to work. (Tr. 334-35). She reported that she cared for her children, "everything they need to have for daily living." (Tr. 336). She reported that her activities were otherwise limited by nerve pain, depression, and anxiety, including problems getting along with others, concentrating, and dealing with stress. (Tr. 336-41). She reported that she had "daily" pain in her back and arms, along with legs. (Tr. 343). She reported that she had never attended physical therapy. (Tr. 344). Plaintiff's husband submitted a Function Report detailing similar complaints. (Tr. 345-53).

On September 13, 2011, Plaintiff presented for a consultative examination with state agency physician Dr. Anthony Fischetto, Ed.D. (Tr. 762). He observed that her hair was wet; she "spoke very slow," and "appeared to process things slow, very lethargic type of demeanor." (Tr. 762). "She was confused on the dates and slow with the history." (Tr. 762). Plaintiff reported that she was "not getting any therapy." (Tr. 763). She "appear[ed] to be sad, depressed." (Tr. 765). She had slow productivity of thought, good abstract thinking, average to low average

intelligence, slow concentration, average memory, poor immediate retention and recall, and limited insight. (Tr. 766). Dr. Fischetto assessed Plaintiff to have a global assessment of functioning ("GAF") of 55 and diagnosed her with a variety of psychiatric impairments, including cannabis abuse. (Tr. 766-67).  Dr. Fischetto opined that Plaintiff had no more than moderate limitation in any work-related function except responding to work pressures in a usual work setting, which he opined was markedly limited. (Tr. 760).

On September 22, 2011, Dr. Peter Garito, Ph.D., reviewed Plaintiff's file and authored a medical opinion. (Tr. 175). Dr. Garito opined that Plaintiff had no more than moderate limitation in any work-related function, with moderate limitation in social functioning and concentration, persistence and pace. (Tr. 175-79). He explained:

> Claimant lives with family which includes children with special needs and husband who is not working. Claimant does all ADL's. She drives, shops and pays bills as well as household chores. She drove to the CE. She has little social contact beside her family but is able to relate appropriately, with adequate self-control. She gets along and likes to play with her children. She makes simple decision and can understand and follow ordinary directions. She can attend regularly and would not need supervision to do tasks. Claimant has the ability to perform simple, routine, repetitive tasks in a stable, work-type situation.
>
> Claimant's statements are partially credible.
>
> The opinion of Anthony Fischetto, EdD in a report dated 9/13! 20 11 has been considered. It has been assigned great weight since it is essentially consistent with this assessment, the results of the CE and

> other evidence in file. Examiner rated claimant's ability to manage stress as markedly impaired which is an overestimate of her limitation and not consistent with her general routine which involves caring for her family who require special effort for their welfare.

(Tr. 179). He also explained:

> Claimant has been in outpatient treatment for a mood disorder for a long while, mostly with medication. Currently she takes medication which somewhat helpful. She is not in psychotherapy. A recent CE found no significant deficits in mental status. She seemed sad and reported dysphoria and anxiety. She has been in inpatient treatment and clears with treatment. No problem in mental status was noted in a 4/ 11 report. See also mrfc.

(Tr. 175).

On October 11, 2011, she contacted her primary care physician and reported "a lot of pain in the back, going down the leg" for the previous "2 days." (Tr. 779). She was prescribed a Medrol Dosepak. (Tr. 779). None of the subsequent records mention back pain, and examination at every visit was normal, with no "motor or sensory deficits." (Tr. 781, 784, 811). She continued treating with an increasing dose of Neurontin for diabetic neuropathy. *Id.* Diagnoses included only diabetes, anemia, obesity, neuropathy, depression, tobacco abuse, "episodes of orthostatic hypotension by patient description," and iron deficiency anemia. *Id.*

Plaintiff began treating with psychiatrist Dr. Razvan Vaida, M.D., in 2006. (Tr. 554).  Plaintiff attended six medication management sessions with Dr. Vaida during the relevant period, in May of 2011, September of 2011, January of 2012, July of 2012, September of 2012, and November of 2012. (Tr. 536, 770, 793-95,

807-10, 814). As of May of 2011, Plaintiff was treating with Cymbalta, Bupropion, Alprazolam, and Fluoexetine. (Tr. 536). Mental status examination indicated "neutral" mood and affect, normal speech, and logical thought process. (Tr. 536). Her diagnoses were major depressive disorder and generalized anxiety, with "no change" in condition since her previous visit. (Tr. 536). Plaintiff's Cymbalta was decreased and her other medications were continued. (Tr. 536). In September of 2011, her Fluoexetine was increased and her other medications were continued. (Tr. 770). Mental status examination indicated "sad" mood and affect, normal speech, and logical thought process. (Tr. 770). Diagnoses remained the same with "no change" in condition. (Tr. 770).

She presented to the hospital with mental complaints in June of 2012, and reported that she had been suffering from mental health symptoms for "one week." (Tr. 793-95). She felt "overwhelmed, anxious, unable to obtain meds [due to] insurance reasons, feeling depressed, denies [suicidal/homicidal ideation]." (Tr. 793). Notes indicate she "presents with psychiatric problem and depression. The onset was 1 weeks ago." (Tr. 793). She rated her symptoms as "moderate." (Tr. 793). Risk factors included "noncompliance." (Tr. 793). Plaintiff denied experiencing any musculoskeletal or neurologic symptoms. (Tr. 794). She "ha[d] no medical complaints." (Tr. 795). Examination was normal except for "depressed" mood and affect. (Tr. 795). She was admitted to "Crisis Diversionary

Residence." (Tr. 799, 805). On admission, she had delusions, specifically paranoid delusions and control, poor insight, impaired reality testing, depressed and anxious mood, and depressed affect. (Tr. 805). Admission diagnoses included major depression with psychotic features, organic mood disorder, PTSD, and partner relational problem. (Tr. 806). On discharge two days later, she had no delusions, good sleep, appropriate appearance and attitude, normal speech, logical thought process, and diagnoses of mood disorder not otherwise specified and generalized anxiety disorder. (Tr. 798-800). Dr. Vaida later noted that she left against medical advice ("AMA"). (Tr. 808).  She was instructed to follow-up with her psychiatrist, Dr. Vaida, on July 3, 2012. (Tr. 799).

On July 3, 2012, Plaintiff no-showed for her appointment with Dr. Vaida. (Tr. 809). On July 31, 2012, Dr. Vaida observed that Plaintiff had neutral mood, normal speech, and logical thought process. (Tr. 808). Plaintiff was taking only Cymbalta and Lorazepam, and "denied" medication side effects. (Tr. 808). Dr. Vaida instructed Plaintiff to avoid caffeine and prescribed Fluoxetine. (Tr. 808).  In September of 2012, she reported that she was "doing ok," Dr. Vaida noted that she had "improved," and increased her Fluoexetine. (Tr. 807). Mental status examination indicated "neutral" mood and affect, normal speech, and logical thought process. (Tr. 807). She treated with Dr. Vaida one more time in November of 2012, where she denied medication side effects and reported only "some

depression at times." (Tr. 814). She reported having "no anger outbursts." (Tr. 814). Mental status examination indicated no abnormalities, with "neutral" mood, normal speech, and logical thought process. (Tr. 814). Dr. Vaida noted that Plaintiff had "improved," instructed her to avoid caffeine, and continue her medications. (Tr. 814).

There is no evidence of any mental health treatment from November of 2012 through March 21, 2013, the date of the ALJ decision. (Tr. 49, 814). At the hearing, the ALJ asked Plaintiff to explain her lack of treatment and noncompliance. (Tr. 136-37). She responded, "I don't know." (Tr. 137). She testified that counseling was not recommended for her. (Tr. 71).

## V.   Plaintiff Allegations of Error

### A.   Credibility

The ALJ found that Plaintiff's claims were not fully credible. Plaintiff does not challenge the ALJ's credibility finding. (Pl. Brief); (Pl. Reply). Thus, the Court finds any argument that the ALJ erred in rejecting her subjective claims to be waived. *See* Local Rule 84.40.4(b) ("The court will consider only those errors specifically identified in the briefs."); *cf. Jimenez v. Barnhart*, 46 F. App'x 684, 685 (3d Cir. 2002) ("because Appellant raised the argument that she is entitled to a closed period of disability for the first time in her objections to the Magistrate Judge's Report and Recommendations, and not in her opening brief, we deem this

argument waived") (citing *Laborers' Int'l Union of N.A. v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir.1994)). However, this issue is central to Plaintiff's other allegations of error, so the Court evaluates the ALJ's credibility determination and finds that it was supported by substantial evidence.

The ALJ found that Plaintiff was less than fully credible based on her treatment record, which indicated the "claimant has interest in playing with her children…the claimant has a goal directed continuity of thought… the claimant has mild irritability with no anger outbursts…the claimant had a logical and relevant thought process when she was discharged from the Crisis Diversionary Residence in June 2012" and assigned great weight to Dr. Garito's opinion that Plaintiff had no work-preclusive mental limitations. (Tr. 47). The ALJ had earlier noted that "the claimant has only a very mild decreased sensation in the left lower extremity" on one occasion in July of 2011. (Tr. 43). The ALJ relied on Plaintiff's activities of daily living. (Tr. 43-47). In examining the Listings, the ALJ pointed out several inconsistencies in claims that Plaintiff had made. (Tr. 43-44).

As discussed below, the ALJ also relied on Plaintiff's noncompliance with how to properly take metformin. (Tr. 46). Noncompliance with recommended treatment is a permissible reason to discount a claimant's credibility. *See* SSR 96-7p. "[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or

records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." *Id.*

The other rationales cited by the ALJ are also accurate characterizations of the record and proper reasons to discount credibility. *See* SSR 96-7p. First, the ALJ properly relied on inconsistent claims made by Plaintiff. "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7P. In Plaintiff's reports to her treating providers, she denied back and arm complaints. Plaintiff was instructed to present to an orthopedic specialist in April 2011 if her back pain continued, but the record contains no evidence of treatment with specialists for physical impairments during the relevant period. (Tr. 517).In July of 2011, Plaintiff reported neuropathy in her left leg and fatigue, but "otherwise, she denies any problems or complaints." (Tr. 757). On October 11, 2011, she contacted her primary care physician and reported "a lot of pain in the back, going down the leg" for the previous "2 days." (Tr. 779). However, on August 5, 2011, Plaintiff had completed a Function Report that stated she had "nerve pain all over [her] body" that required her to lie down throughout the day and "daily" pain in her back and arms, along with legs. (Tr. 334, 343).

This Function Report is inconsistent with her denial in July of 2011 that she had any complaints other than neuropathy in her left leg and with her October of

2011 report that she had back pain that began "2 days" earlier. (Tr. 779). She had no diagnosis related to her arms or back at any time during the relevant period. (Tr. 781, 784, 811). These inconsistencies are a "strong indication" of Plaintiff's credibility. *See* SSR 96-7p. The ALJ did not detail these inconsistencies, but had earlier rejected Plaintiff's claim that she met a Listing based on her inconsistent claims. *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) (Court may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned"); *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis" and instead must only "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."); *Hur v. Comm'r Soc Sec.*, 94 F. App'x 130, 133(3d Cir. 2004) ("There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record").

With regard to the objective medical evidence, the ALJ correctly noted that the only objective findings related to physical impairments was "very mild" decreased sensation in July of 2011. (Tr. 43). The ALJ also correctly noted that her psychiatric providers observed minimal objective findings. (Tr. 46-47). Moreover, the ALJ relied on Dr. Garito's interpretation of the objective medical evidence. The ALJ is instructed to evaluate the objective medical evidence in evaluating

Plaintiff's credibility. *See* 20 C.F.R. §404.1529. The ALJ may rely on medical opinions to interpret the objective evidence in assessing Plaintiff's credibility. *See Seever v. Barnhart*, 188 F. App'x 747, 754 (10th Cir. 2006) (citing *Winfrey v. Chater,* 92 F.3d 1017, 1022 (10th Cir.1996)) (We will not fault the ALJ for failing to interpret [Plaintiff's] symptoms and test results differently than [a medical expert]").

The ALJ accurately characterized Plaintiff's activities of daily living. As of August of 2009, she was living with an "abusive" husband and three children aged six, four, and three. (Tr. 670). By December of 2009, she reported that she had separated from her husband, and had her children "24/7." (Tr. 658). Her youngest child had been diagnosed with ADHD and ODD, and Plaintiff was living with her mother because her only significant income was child support. (Tr. 658).[2]   On August 5, 2011, she reported that she cared for her children, "everything they need to have for daily living." (Tr. 336). The ALJ properly summarized Plaintiff's testimony, writing that "the claimant's activities of daily living such as caring for her sick mother and children, two of which have serious problems for which they have been found disabled, and all without the assistance of a spouse as the claimant reports he is a diagnosed schizophrenic and has also been found disabled." (Tr. 46-

---

[2] Plaintiff's family situation may have put her in dire financial straits, but the only question to address in this appeal is whether she was unable to perform work due to limitations caused by medical impairments. *See* 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

47). The ALJ had earlier explained, "the claimant testified that from summer 2011 on, she has helped her mother three to four times per week for two to three hours per day as her mother had open heart surgery and is going through chemotherapy. The claimant helps her mother eat, bathe and take medications. Additionally, the claimant raises three children, ages six, seven and nine (the youngest with autism and the oldest with ADHD) without significant help from their father and makes sure that they do their assigned chores." (Tr. 43). The ALJ appropriately considered her activities of daily living. *See Horodenski v. Comm'r of Soc. Sec.*, 215 F. App'x 183, 189 (3d Cir. 2007)

Plaintiff's activities of daily living, combined with her conservative treatment, inconsistent claims, lack of objective medical evidence, and Dr. Garito's opinion, support the ALJ's finding that Plaintiff was not fully credible. *See Richardson v. Perales*, 402 U.S. at 401 (1971). "Neither the district court nor the Court of Appeals is empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir.1984)); *see also Chandler v. Comm'r of Soc. Sec.*,  667 F.3d 356, 359 (3d Cir.2011) ("Courts are not permitted to re-weigh  the evidence or impose their own factual determinations" (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The ALJ is entitled to deference with regard to credibility determinations. *See  Szallar v.*

*Comm'r Soc. Sec.*, No. 15-1776, 2015 WL 7445399, at *1 (3d Cir. Nov. 24, 2015)

("the ALJ's assessment of his credibility is entitled to our substantial deference")

(citing *Zirnsak v. Colvin*, 777 F.3d 607, 612–13 (3d Cir.2014)). Plaintiff must

demonstrate that no reasonable mind would accept the evidence evaluated by the

ALJ to conclude that she was not fully credible. *See Richardson v. Perales*, 402

U.S. at 401 (1971). Here, Plaintiff has not alleged, much less demonstrated, that no

reasonable person would have found her less than fully credible. *Id.* Substantial

evidence supports the ALJ's credibility finding. *Id.*

## B.    Bias

Plaintiff asserts that the ALJ exhibited bias against her. (Pl. Brief at 17-18);

(Pl. Reply at 9-10). Bias by an ALJ may be grounds for a remand because "due

process demands impartiality on the part of those who function in judicial or quasi-

judicial capacities." *Schweiker v. McClure*, 456 U.S. 188, 195-96 (1982). The

Court "start[s], however, from the presumption that the hearing officers…are

unbiased. This presumption can be rebutted by a showing of… [a] specific reason

for disqualification and, the burden of establishing a disqualifying interest rests on

the party making the assertion." *Id.*

Plaintiff asserts that the ALJ exhibited bias against her in a passage that

states:

The claimant testified that she gets dizzy after taking Metformin but
takes it an hour or more before she eats. The undersigned notes that

> Metformin is not to be taken more than fifteen minutes before eating
> as doing otherwise causes hypoglycemia symptoms such as dizziness.
> The claimant's misuse of Metformin shows that there is some question
> regarding the claimant's addressing her diabetes by appropriately
> treating for it. (See notes of hearing of March 12, 2013).

(Tr. 46). Plaintiff asserts that the ALJ exhibited bias because the ALJ did not cite

any medical evidence to show that Metformin must be taken within fifteen

minutes. (Pl. Brief at 17-18). Plaintiff asserts that this passage demonstrates a "bias

towards claimants suffering with diabetes." (Pl. Brief at 18).

However, Plaintiff does not assert that she was actually using Metformin

properly, or dispute that improper use of medication can be used to discount

credibility. (Pl. Brief at 17-18). Plaintiff also does not acknowledge her testimony

on March 12, 2013, which was cited by the ALJ. (Pl. Brief at 17-18). At the

hearing on March 12, 2013, the ALJ asked Plaintiff about taking Metformin within

fifteen minutes of a meal, and Plaintiff agreed that she was supposed to take

Metformin within fifteen minutes of a meal to avoid a drop in blood sugar that

could cause dizziness. (Tr. 127-29). Plaintiff was represented by counsel and the

hearing, and counsel made no objection to this testimony. (Tr. 127-29). The ALJ

was not relying on Plaintiff's diabetes diagnosis. (Tr. 46). The ALJ was relying on

Plaintiff's noncompliance with treatment. (Tr. 46). Noncompliance with prescribed

treatment is an appropriate reason to discount a claimant's credibility. *See* SSR 96-

7p.  Plaintiff does not establish "a specific reason for disqualification." *Schweiker*

*v. McClure*, 456 U.S. 188, 195-96 (1982). The Court finds no merit to this allegation of error.

## C.     Medical Opinions

Plaintiff asserts that the ALJ erred in assessing the medical opinions. (Pl. Brief at 28); (Pl. Reply at 7-8). Plaintiff asserts that it was legal error for the ALJ to reject Dr. Fischetto's non-treating medical opinion because "the ALJ finding herself more qualified to interpret Orndorff's symptoms and subjective complaints than a licensed psychologist and is clearly an error of law." (Pl. Brief at 28). Plaintiff cites no legal authority for this premise. Section 404.1527(e)(2)(ii) provides that ALJ's "are not bound by *any* findings made by" non-treating sources. *Id.* (emphasis added). Moreover, here, Dr. Fischetto's opinion was contradicted by Dr. Garito's opinion, which is not mentioned in Plaintiff's brief. (Pl. Brief at 27-28).

Plaintiff argues that the ALJ was required to provide "specific and legitimate" reasons to reject Dr. Fischetto's opinion, and that the ALJ failed to do so here because the analysis was "inadequate and vague." (Pl. Brief at 26-28). Section 404.1527(c)(2) requires an ALJ to provide "good reasons" to reject a contradictory medical opinion from a treating source in favor of non-medical evidence or a non-treating medical opinion. *Id.* However, for non-treating sources, the Regulations do not require "good reasons" to reject them. *See* 20 C.F.R.

§404.1527(e)(2). Otherwise, the "good reasons" language would be superfluous. *See Bilski v. Kappos*, 561 U.S. 593, 607–08, 130 S.Ct. 3218, 177 L.Ed.2d 792 (2010) (internal citations omitted) (Court may not interpret "any statutory provision in a manner that would render another provision superfluous").

The ALJ sufficiently explained and resolved the conflict between Dr. Garito's opinion and Dr. Fischetto's opinion. *See Gober v. Matthews*, 574 F.2d 772, 777 (3d Cir. 1978) ("an administrative law judge is free…choose between properly submitted medical opinions"). Again, Plaintiff's brief does not mention Dr. Garito's opinion or explain why the ALJ was not entitled to rely on Dr. Garito's opinion over Dr. Fischetto's opinion. (Pl. Brief). The ALJ explained that Dr. Garito's opinion was "supported by the record as a whole and is consistent with Dr. Fischetto's observation that the claimant has a goal directed continuity of thought," along with Dr. Fischetto's assessment of a GAF of 55. (Tr. 46). The ALJ explained that Dr. Fischetto's assessment of marked limitations was "not supported by the record as a whole and is not consistent with Dr. Fischetto's own observation that the claimant has goal directed continuity of thought or the claimant's activities of daily living such as caring for her sick mother and children, two of which have serious problems for which they have been found disabled, and all without the assistance of a spouse as the claimant reports he is a diagnosed schizophrenic and has also been found disabled." (Tr. 46-47). Plaintiff does not directly address any

of these rationales. (Pl. Brief); (Pl. Reply). A reasonable mind would find these rationales as adequate to resolve the conflict in opinions in favor of Dr. Garito. *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence supports the ALJ's assignment of weight to the medical opinions.

### D.    Step Two

Plaintiff asserts that the ALJ erred at step two. (Pl. Brief at 14-16); (Pl. Reply at 2-4). At step two, the ALJ identifies medically determinable impairments and classifies them as severe or non-severe. 20 C.F.R. § 404.1529. Determining whether a claimant has any medically determinable, severe impairment is a threshold test. 20 C.F.R. § 404.1520(c). If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. § 404.1520(d)-(g). When the evaluation process proceeds past step two, a claimant alleging an error at step two must articulate the impact this had on subsequent steps. *See Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 1706, 173 L. Ed. 2d 532 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination") (citing *Nelson v. Apfel*, 131 F.3d 1228, 1236 (7th Cir. 1997) (Social Security claimant must demonstrate prejudice by ALJ error)) (other internal citations omitted). In *Rutherford v. Barnhart*, 399 F.3d 546 (3d Cir. 2005), the Third Circuit held that a "generalized response" that the impairment makes it

"more difficult…to stand, walk and manipulate [the] hands and fingers" was "not enough to require a remand" based on an error at step two. *Id.* at 553.

Plaintiff asserts that the ALJ erred at step two in evaluating her diabetes, hyperlipidemia, iron deficiency anemia, and left lower extremity neuropathy. (Pl. Brief at 13-15).[3] Plaintiff cites diagnoses for each of these conditions, and additionally cites her weight; her subjective reports of feeling tired, experiencing pain all over, increased thirst, polyuria, blurry vision, headaches, dizziness, "not 'feeling right,'" nausea, fatigue, burning and tingling in her legs, and orthostatic hypotension; and her elevated blood sugars. (Pl. Brief at 14-16).

Plaintiff notes that some of these records are from prior to the relevant period and states that they are "relevant to her ongoing disability." (Pl. Brief at 14). Overall, Plaintiff cites a variety of records from 2009 through March of 2011. (Pl. Brief at 3-7) (citing Tr. 382-85, 401, 415-17, 423-28, 430-46, 452-56, 478, 543-46, 554-56, 568, 572, 574, 743, 745, 748). However, on March 7, 2011, an ALJ found that Plaintiff was not disabled under the Act. (Tr.159 -69). Plaintiff does not argue that her prior case should be reopened, or that the ALJ constructively reopened her prior case. (Pl. Brief); (Pl. Reply). Thus, res judicata bars any claim that Plaintiff was disabled prior to March 7, 2011. *See Tobak v. Apfel*, 195 F.3d 183, 185–88 (3d

---

[3] Plaintiff also addresses ADHD, but fails to allege that she was diagnosed with ADHD during the relevant period or suffered any work-related limitation from ADHD. (Pl. Brief at 13-17).

Cir.1999); *Rogerson v. Sec'y of Health & Human Servs.*, 872 F.2d 24, 29 n. 5 (3d Cir.1989). Additionally, she applied for benefits on May 20, 2011 and alleges onset on May 27, 2011. (Tr. 42, 294-95). She does not allege onset prior to May 27, 2011. (Tr. 63).

Moreover, the evidence prior to the relevant period show more intensive care and more objective findings than during the relevant period, as records from 2009 through March of 2011 show repeated hospitalizations for suicide ideation; a suicide attempt; and emergency room visits for dizziness, elevated sugars, anxiety, and excessive Xanax use. (Tr. 382-85, 401, 415-17, 423-28, 430-46, 452-56, 478, 543-46,  554-56, 568, 572, 574, 743, 745, 748). These records contain objective findings that include depressed mood and affect, suicidal ideation, slow flow of thought, ideas of hopelessness/helplessness, impaired insight and judgment, visual hallucinations, confusion, sleep disturbances, poor concentration/memory, irritability, and panic attacks. *Id.*  In contrast, Plaintiff's treatment during the relevant period consisted of only five primary care visits, six medication management session, and one mental health hospitalization. *Supra.* The only objective finding noted by her primary care physician was "very mild" decreased sensation in July of 2011, with normal findings thereafter. *Supra.* The only objective finding by her psychiatrist was occasionally "sad" mood and affect. *Supra.*  Thus, the records prior to May 27, 2011, Plaintiff's alleged onset, are only

nominally probative of Plaintiff's disability during the relevant period. (Tr. 159-69).

Plaintiff also cites evidence from after the ALJ decision. (Pl. Brief at 17) (citing Tr. 17-21). When the Appeals Council denies review, evidence that was not before the ALJ may only be used to determine whether it provides a basis for remand under sentence six of section 405(g), 42 U.S.C. ("Sentence Six"). *Szubak v. Secretary of Health and Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984). Sentence Six requires a remand when evidence is "new" and "material," if the claimant demonstrated "good cause" for not having incorporated the evidence into the administrative record. *Id.* In order to be material, "the new evidence [must] relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." *Id.* The relevant time period is "the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b); *Mathews v. Apfel*, 239 F.3d at 592. The materiality standard also "requires that there be a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination." *Szubak*, 745 F.2d at 833. Plaintiff has failed to allege or establish that this evidence was new, material, and omitted for good cause. (Pl. Brief); (Pl. Reply); *see also* Local Rule 84.40.4(b) ("The court will consider only those errors specifically identified in the briefs."); *cf. Jimenez v.*

*Barnhart*, 46 F. App'x 684, 685 (3d Cir. 2002) ("because Appellant raised the argument that she is entitled to a closed period of disability for the first time in her objections to the Magistrate Judge's Report and Recommendations, and not in her opening brief, we deem this argument waived") (citing *Laborers' Int'l Union of N.A. v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir.1994)).

Beyond citing these findings, Plaintiff does not explain how any error at step two impacted later steps. Diagnoses, elevated blood sugars, and weight, alone, do not establish an error. *See Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991) (There is no "presumption that a mere diagnosis…renders an applicant eligible for benefits under the Social Security Act"). Plaintiff's citation to her subjective reports is like the "generalized response" that *Rutherford* rejected. *See Rutherford*, 399 F.3d at 553. As discussed above, the ALJ properly found that Plaintiff's subjective reports were less than fully credible, and Plaintiff has not challenged the ALJ's credibility assessment. *Supra*. Plaintiff cannot establish any harm in failing to credit her subjective reports without articulating why the ALJ's credibility assessment was flawed. *See Rutherford*, 399 F.3d at 553. The Court finds no merit to this allegation of error.

### E.    Post-Hearing Consultative Examination

Plaintiff submits a one-sentence argument that "if the ALJ had any doubt regarding the severity of Orndorff's physical impairments and resultant limitations,

pursuant to CFR 404.1519a(b), the ALJ should have sent her for a post-hearing internal medicine consultative examination." (Tr. 17). First, "any doubt" is not the proper standard for a social security proceeding, as the ALJ does not need to support findings with a preponderance of evidence, much less provide certainty beyond a reasonable doubt. *See Richardson v. Perales*, 402 U.S. at 401 (1971). Second, 20 C.F.R. §404.1519a(b) requires a consultative examination only when there is an unresolved conflict in evidence or the evidence is "insufficient" to make a determination. Plaintiff has failed to allege that there was an unresolved conflict or that evidence was insufficient to make a determination. (Pl. Brief); (Pl. Reply). Plaintiff's lack of treatment, lack of complaints, and lack of objective findings related to physical complaints all provide evidence that was sufficient for the ALJ to make a determination. The Court finds no merit to this allegation or error.

## F.   Listing

Plaintiff asserts that she meets 20 C.F.R. Part 404, Subpart P, Appendix, ("Listing") §12.04 and §12.06 (Pl. Brief); (Pl. Reply at 5-6).  A claimant must establish every element of a Listing. *See Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).  Listing requirements are strict, representing "a higher level of severity than the statutory standard." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). Plaintiff must establish the Paragraph B criteria for either listing, which requires marked impairment in at least two areas. *See Jones v. Colvin*, No. 1:13-CV-02161-GBC,

2014 WL 4796491, at *13 (M.D. Pa. Sept. 26, 2014). A marked impairment is one that "interfere[s] seriously with [her] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.00. Both Dr. Fischetto and Dr. Garito opined that Plaintiff did not meet the Listings because she had moderate, not marked, limitations in each of the Paragraph B areas. (Tr. 175-79, 760-67).

Plaintiff asserts that she had a marked limitation in social functioning. The only evidence during the relevant period she cites is Dr. Fischetto's consultative examination. (Pl. Brief at 31-32). However, Dr. Fischetto opined that Plaintiff had only moderate limitation in social function. (Tr. 760-67). Plaintiff cites records from July of 2009, but the relevant period does not begin until May of 2011. (Pl. Brief at 31) (citing Tr. 382, 554, 568). Plaintiff cites records from February of 2011 that she had "poor concentration/memory," but does not explain how this relates to social function. (Pl. Brief at 31) (citing Tr. 478).

Plaintiff asserts that she had a marked limitation in concentration, persistence, and pace. Again, she cites records from prior to the relevant period. (Pl. Brief at 32) (citing Tr. 478, 554). She also cites Dr. Fischetto's examination. (Pl. Brief at 32) (citing Tr. 760, 762). Again, Dr. Fischetto opined that she had only moderate limitation in concentration, persistence, and pace. (Tr. 760-67).

Even if all the evidence Plaintiff cited was from the relevant period, she does

not address the conflicting evidence on which the ALJ relied:

> In social functioning, the claimant has moderate difficulties. Although she noted that she has problems getting along with family, friends, neighbors or others, the claimant testified that she volunteers and helped several days with the Salvation Army coat drive. She also testified that she attends church on Wednesdays and sometimes on Sundays. The claimant maintains contact with a friend from Florida, her mother, her brother and her neighbor regularly. Moreover, the claimant plays card games with her family and goes skating. (See Exhibit B4E and notes of hearing of December 4, 2012).

> With regard to concentration, persistence or pace, the claimant has moderate difficulties. Although she stated that she does not finish what she starts, the claimant testified that she reads the newspaper, watches movies and reads the Bible. Furthermore, the claimant indicated that she shops in stores and prepares her own meals. Dr. Fischetto observed that the claimant has a goal directed continuity of thought. As previously mentioned, the claimant also assures that her children perform their assigned chores and ensured that her mother's needs were met following open heart surgery and chemotherapy cancer treatment. (See Exhibits B4E and B7F and notes of hearing of December 4, 2012).

(Tr. 44).

The ALJ was entitled to resolve conflicts in evidence in favor of moderate,

rather than marked limitations, particularly with the support of Dr. Fischetto's

opinion and Dr. Garito's opinion. *See Gray v. Colvin*, No. 3:13-CV-01944-GBC,

2014 WL 4536552, at *18-19 (M.D. Pa. Sept. 11, 2014); *Beck v. Colvin*, No. 1:14-

CV-31, 2015 WL 757554, at *15 (M.D. Pa. Feb. 23, 2015). The only evidence of

marked limitation in these areas was Plaintiff's subjective claims. As discussed

above, Plaintiff has not challenged the ALJ's finding that her subjective claims were less than fully credible. *Supra.* Plaintiff has failed to establish that no reasonable person would have found that she did not meet the Listings. The Court finds no merit to this allegation of error.

### G.    RFC

Plaintiff asserts that the ALJ erred in assessing limitations in the RFC relating to concentration, persistence, and pace. (Pl. Brief at 22); (Pl. Reply at 10-11). In *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004), the Court held that a limitation to simple one or two step tasks was not sufficiently specific to convey limitations in concentration, persistence, and pace identified on a Psychiatric Review Technique Form ("PRTF") given the record in that particular case. *Id.* at 552. However, in *Ramirez*, the vocational expert testified "that each of the jobs suitable for Ramirez (assembler, packer, and inspector) would have daily production quotas and that Ramirez would have to maintain a certain degree of pace to maintain those jobs." *Id.* The Court also explained that:

> Of course, there may be a valid explanation for this omission from the ALJ's hypothetical. For example, the ALJ may have concluded that the deficiency in pace was so minimal or negligible that, even though Ramirez "often" suffered from this deficiency, it would not limit her ability to perform simple tasks under a production quota. The record, however, would seem to suggest otherwise.

*Id.* The Court explained that a medical expert had specifically testified that the claimant's ability to finish tasks was dependent on her proximity to her children.

*Id*. Thus, in *Ramirez*, the record "suggest[ed]" that an additional limitation related

to pace was necessary. *Id*. As another Court in this District has explained:

> Moreover, we find the Third Circuit's decision in *Ramirez* distinguishable from the instant case. In *Ramirez,* the court observed that there may have been a valid explanation for the omission of a more detailed description of the claimant's mental limitation from the ALJ's hypothetical. *Ramirez,* 372 F.3d at 555. The court noted that "the ALJ may have concluded that the deficiency in pace was so minimal or negligible that, even though Ramirez 'often' suffered from this deficiency, it would not limit her ability to perform simple tasks under a production quota," but found that the record seemed to suggest otherwise. *Id.* The instant case presents the opposite situation, the record suggests that even though Plaintiff suffers from a moderate deficiency in the areas of concentration, persistence, and pace, and a mild deficiency in the area of social functioning, these limitations did not effect her ability to function in any discernable fashion during the relevant period.

*Whitmire v. Comm'r of Soc. Sec.*, 3:13-CV-1380, 2014 WL 582781, at *8-9 (M.D.

Pa. Feb. 14, 2014) (Kane, J.); *see also Santiago-Rivera v. Barnhart*, CIV.A. 05-

5698, 2006 WL 2794189, at *11 (E.D. Pa. Sept. 26, 2006) ("It is true that, in

*Ramirez*, the Third Circuit held that greater specificity than a limitation to one to

two step simple tasks *may* be necessary in presenting functional limitations caused

by a mental impairment in a hypothetical to a VE. However, the *Ramirez* Court

specifically suggested that the case in which more may be required is one in which

the Santiago-Rivera had *clearly established in the record* additional, specific

deficiencies in concentration, persistence and/or pace that could not be adequately

conveyed by a hypothetical limited to simple tasks.")(emphasis in original).

Plaintiff cites *Ramirez,* and cases that have relied on *Ramirez.* (Pl. Brief at 22-23). However,  unlike *Ramirez*, Plaintiff's counsel did not elicit testimony from the VE regarding whether the jobs required "daily production quotas and that [Plaintiff] would have to maintain a certain degree of pace to maintain those jobs." *Ramirez*, 372 F.3d at 552. Plaintiff's brief does not explain how "[t]he record…would seem to suggest" that Plaintiff's impairments would "limit her ability to perform simple tasks under a production quota," as required by *Ramirez*. *Id.* at 555. Merely identifying the ALJ's finding that Plaintiff has moderate limitations in concentration, persistence, and pace and then citing *Ramirez* is insufficient. (Pl. Brief at 23); *see Whitmire v. Comm'r of Soc. Sec.*, 3:13-CV-1380, 2014 WL 582781, at *8-9 (M.D. Pa. Feb. 14, 2014) (Kane, J.); *see also Santiago-Rivera v. Barnhart*, CIV.A. 05-5698, 2006 WL 2794189, at *11 (E.D. Pa. Sept. 26, 2006). Here, unlike *Ramirez*, the record does not otherwise suggest that the ALJ failed to include necessary limitations in the RFC. *Id.* The Court finds no merit to this allegation of error.

## H.    Step 5

Plaintiff asserts that the ALJ erred in evaluating step five. (Pl. Brief at 19); (Pl. Reply at 12-13). Plaintiff notes that the "burden shifts" to the ALJ at step five. (Pl. Brief at 19). However, the burden only shifts with regard to vocational evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993); 42 U.S.C. §

423(d)(5)(A); 20 C.F.R. § 416.912(a). By the time the evaluation progresses to step five, the ALJ has already formulated Plaintiff's RFC, and is applying the RFC, age, and vocational history to available jobs in the national economy. *Id.* The RFC is assessed before step four. *Id.* Plaintiff bears the burden through step four. *Id.* Consequently, the burden with regard to RFC findings remains with the Plaintiff. *Id.* A step five challenge only addresses the vocational evidence that supports the ALJ's finding that Plaintiff could perform jobs in the national economy. *Id.*

Plaintiff asserts that the VE testimony conflicted with the DOT because it included an option to alternate between sitting and standing. (Pl. Brief at 19). As SSR 00-4p explains:

> Evidence from VEs or VSs can include information not listed in the DOT. The DOT contains information about most, but not all, occupations. The DOT's occupational definitions are the result of comprehensive studies of how similar jobs are performed in different workplaces. The term "occupation," as used in the DOT, refers to the collective description of those jobs. Each occupation represents numerous jobs. Information about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a VE's or VS's experience in job placement or career counseling.
>
> The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT.

*Id.* Consequently, the VE testimony provides substantial evidence regarding the availability of jobs with a sit/stand option.

"At will" is sufficiently specific to communicate the position at which Plaintiff would be alternating positions. Courts have consistently explained that "'at will' constitutes a clear direction that it is for the Plaintiff to determine when and for how long she sits or stands. *Nicholson v. Colvin*, No. 3:14 CV-1819, 2015 WL 1275365, at *10 (M.D. Pa. Mar. 19, 2015); *Torres v. Colvin*, No. 3:14-cv-00144 (M.D. Pa. Oct. 30, 2015). Another Court in this District has observed that a requirement to sit or stand at will constitutes "shorthand language in matters about which the ALJ and VE are well versed." *Minichino v. Colvin*, 955 F.Supp.2d 366, 381 (M.D. Pa. 2013) (Conaboy, J.). The Court explained:

> As noted above, with this claimed error Plaintiff's challenge to the ALJ's compliance with SSR 00–4p relates to the sit/stand option included in the RFC and presented to the VE in the ALJ's hypothetical. (Doc. 9 at 12.) The conflict allegedly arises because the sit/stand option is not referenced in the DOT. (*Id.*) Plaintiff asserts the ALJ recognizes the conflict in his Decision but did not elicit the required testimony at the hearing. (*Id.*)
>
> We do not agree with Plaintiff's assessment of the situation presented here. In his RFC determination, the ALJ found Plaintiff has the capacity to perform sedentary work with limitations, including that she must be able to sit and stand at will. (R. 24.) In his hypothetical to the VE, the ALJ included this limitation by saying that the hypothetical individual could perform work at a sedentary level but was further restricted on several bases, including that she "requires the ability to sit, stand, move about at will." (R. 80.) A full reading of the VE's response indicates she implicitly acknowledged that the relevant DOT sections for the receptionist information clerk and surveillance

system monitor positions did not expressly contain sit/stand options when she found that the overall numbers would be eroded (by about fifty percent) with such an option. (R. 82.) In general terms, the VE's observation that these positions allow change of position at will, is appropriately viewed as a vocational expert's application of her expertise, her "knowledge, experience, and observations" in the words of the ALJ. (*See* R. 33.) Her reduction in the number of positions based on the conflict is similarly appropriate.

Viewed in this context, the ALJ does not run afoul of SSR 00–4p regarding the receptionist information clerk and surveillance monitor positions because he was not presented with an "apparent unresolved conflict." Rather, a fair reading of the colloquy here is that the ALJ was presented with a conflict (made apparent by the VE's testimony) and the VE resolved the conflict to the ALJ's satisfaction in the course of her testimony. In this context, the ALJ would be under no obligation to elicit further testimony from the VE on the sit/stand issue for the two positions for which the VE testified a reduction in numbers would be appropriate based on this limitation—the receptionist information clerk and surveillance monitor positions. Importantly, the ALJ acknowledges in his Decision that the VE's testimony is inconsistent with the DOT and further states there is a "reasonable explanation" for the discrepancy, identifying how it is accounted for. (R. 33.)

While a more detailed analysis would be preferable both in the dialogue between the ALJ and VE at the ALJ hearing and in the ALJ's Decision, And we reject Plaintiff's urging to adopt an interpretation of SSR 00–4p which would preclude allowing an ALJ to make reasonable assumptions and preclude a VE from using shorthand language in matters about which the ALJ and VE are well versed. The approach we adopt to these difficult proceedings and technical matters is warranted both by commonsense and Third Circuit caselaw which clearly does not require formulaic language, *see, e.g., Rutherford v. Barnhart,* 399 F.3d 546, 557–58 (3d Cir.2005); *Sargent v. Comm'r of Social Security,* 476 Fed.Appx. 977, 980–81 (3d Cir.2012) (not precedential).

*Id.* at 380-81. The Court finds this reasoning persuasive. *Nicholson* was an appeal

by the same counsel representing Plaintiff here.

Plaintiff also asserts that the ALJ should have "made an inquiry to find out whether the vocational expert's conclusions are 'reliable.'" (Pl. Brief at 22). Plaintiff's counsel did not object to the VE's qualifications and stipulated that the VE was a "vocational expert." (Tr. 146). The ALJ asked the VE whether there were conflicts with the DOT, and the VE explained that the DOT did not address a sit/stand option, and that his testimony was based on his work in the field for "more than five decades." (Tr. 149). Thus, the ALJ obtained a "reasonable explanation" for any conflict. *See* SSR 00-4p. The VE explained that he had build in an erosion for the sit/stand option. (Tr. 149-50). The VE's testimony provides substantial evidence for step five.

Plaintiff also asserts that the ALJ lacked substantial evidence at step five because he posed an incomplete hypothetical to the expert. (Pl. Brief at  20). However:

> [O]bjections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself. That is, a claimant can frame a challenge to an ALJ's reliance on vocational expert testimony at step 5 in one of two ways: (1) that the testimony cannot be relied upon because the ALJ failed to convey limitations to the vocational expert that were properly identified in the RFC assessment, or (2) that the testimony cannot be relied upon because the ALJ failed to recognize credibly established limitations during the RFC assessment and so did not convey those limitations to the vocational expert. Challenges of the latter variety (like Rutherford's here) are really best understood as challenges to the RFC assessment itself.

*Rutherford v. Barnhart*, 399 F.3d 546, 554, n. 8 (3d Cir. 2005). As discussed above, substantial evidence supports the ALJ's RFC. *Supra.* The Court finds no merit to this allegation of error.

## VI.   Conclusion

The Court finds that the ALJ made the required specific findings of fact in determining whether Plaintiff met the criteria for disability, and the findings were supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Brown*, 845 F.2d at 1213; *Johnson*, 529 F.3d at 200; *Pierce*, 487 U.S. at 552; *Hartranft*, 181 F.3d at 360; *Plummer*, 186 F.3d at 427; *Jones*, 364 F.3d at 503. Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence requires "more than a mere scintilla" but is "less than a preponderance." J*esurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Here, a reasonable mind might accept the relevant evidence as adequate. Accordingly, it is HEREBY RECOMMENDED:

  I.   This appeal be DENIED, as the ALJ's decision is supported by substantial evidence; and

II.      The Clerk of Court close this case.


The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a Magistrate Judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A Judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The Judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.


Dated: March 9, 2016                          _____s/Gerald B. Cohn_____
                                                                   GERALD B. COHN
                                                      UNITED STATES MAGISTRATE JUDGE